# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-1835V
Filed: July 25, 2023

| | |
|---|---|
| * * * * * * * * * * * * * * | |
| LOURDES OSORIO, | * |
| | * |
| Petitioner, | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| * * * * * * * * * * * * * * | |

*Bridget McCullough, Esq.*, Muller Brazil, LLP, Dresher, PA, for petitioner.
*Julia Collison, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On November 29, 2018, Lourdes Osorio ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act" or "Vaccine Program"). Petitioner alleges that she received an influenza ("flu") vaccine on December 5, 2015, and thereafter suffered from Guillain-Barré Syndrome ("GBS"). Petition at 1, ECF No. 1. A decision dismissing the matter for insufficient proof was issued on July 9, 2021. ECF No. 34.

On January 7, 2022, petitioner filed a Motion for Attorneys' Fees and Costs pursuant to Section 15(e) of the Vaccine Act. ECF No. 38 ("Motion for Fees"). Respondent filed a response opposing the motion and raising reasonable basis on January 20, 2022. ECF No. 39 ("Response").

---

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

1

On March 21, 2022, petitioner filed a Reply maintaining that objective evidence in the record supports reasonable basis. Reply, ECF No. 42 ("Reply").

Petitioner seeks a total of **$18,005.93**, representing $16,297.60 in attorneys' and paralegals' fees and $1,708.33 in costs. *See* Motion for Fees at 2. After careful consideration, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED** for the reasons set forth below.

### I. Background

**A. Procedural History**

Petitioner filed her petition on November 29, 2018, alleging she suffered from GBS caused by a flu vaccine administered on December 5, 2015. ECF No. 1. Petitioner received the flu vaccine in the United States but was initially diagnosed with GBS while in the Dominican Republic ("DR"). *Id*. Petitioner filed medical records on the same date as her petition, including the record of her flu vaccination from Urban Health Inc., and records from WellStar Cobb Hospital, WellStar Cobb Hospital Inpatient Rehabilitation Unit, Plaza del Sol Health Center, and NY Orthopedics Flushing. *See* Petitioner's Exhibit ("Pet. Ex.") 1-5. Petitioner did not file any records from her time in the DR at the time of the filing of her petition.

Between January 24, 2019 and May 29, 2019 petitioner filed five motions for extensions of time to file medical records, all of which were granted. ECF Nos. 8-9, 12, 15-16. Petitioner's counsel advised that this case was filed prior to collecting all relevant records due to the "pressing statute of limitations" and difficulties communicating with providers in the DR.[3]

On June 11, 2019, petitioner filed a status report stating that she would not be receiving additional records from the DR and requesting a status conference to discuss how to proceed. ECF No. 17.

During a status conference on June 18, 2019, petitioner's counsel recounted the efforts to obtain medical records from the DR. Scheduling Order filed June 19, 2019 at 1, ECF No. 18. Petitioner's counsel advised that when she was first contacted by petitioner, petitioner stated she was in the process of obtaining medical records of her treatment in the DR. *Id.* After petitioner was unsuccessful in obtaining these records, petitioner's counsel sent a general request for the records, a request in Spanish, and emailed petitioner's doctor in the DR directly. *Id.* None of these efforts were successful. *Id.* Petitioner hired an attorney in the DR to assist her in collecting these records, which also proved unsuccessful. At that time, petitioner intended to travel to the DR before the fall of 2019 to secure the records. *Id.* The parties also discussed issues with petitioner's claim, including the onset of petitioner's GBS and an alternative cause for her GBS, namely, a

---

[3] *See* ECF No. 8 at 1; ECF No. 9; ECF No. 12 (describing the efforts made to obtain records from the DR); ECF No. 15 (stating that providers in the DR had been unresponsive to requests due to an outstanding past due balance for services rendered); ECF No. 16.

2

gastrointestinal illness. The undersigned informed petitioner's counsel that this claim could not continue without records from the DR to support her allegations and address those issues. *Id.*

Petitioner filed a status report on July 18, 2019, which included correspondence from Fruit Cruz Almonte,[4] an attorney retained by petitioner in the DR, assuring that the records would be delivered to petitioner's counsel by July 22, 2019. ECF No. 19. Petitioner then filed a one-page Spanish record on July 30, 2019. Pet. Ex. 15, ECF No. 21. In a status report filed that same day, petitioner's counsel conceded that more records exist, portions of which can be found in other exhibits filed. *See* Pet. Ex. 2 at 1635. However, based on the representations of Mr. Almonte, it was counsel's belief that the one-page record filed as Petitioner's Exhibit 15 was "the only kind of record that will be released." ECF No. 22.

On November 4, 2019, respondent filed a Rule 4(c) Report recommending against compensation. Respondent's Report, ECF No. 24. Respondent argued that petitioner had not met the six-month severity requirement; had not established a Table injury because onset was outside the 42-day period set forth in the Vaccine Injury Table; that there is a more likely alternative diagnosis for her injury; and that petitioner had not established her injury was caused-in-fact by the vaccination. *Id.* at 11-16. Respondent also noted that certain records remained outstanding. *Id.* at 10.

Petitioner filed a status report on February 3, 2020, advising that she was unable to meet her burden without additional records from the DR. ECF No. 26. Petitioner requested 45 days to inform the Court how she intended to proceed.

A status conference was held on April 21, 2020 at which petitioner's counsel advised that she was unable to obtain additional records from the DR and acknowledged that the current records filed were insufficient to support entitlement. Petitioner was unwilling to dismiss her claim but was amenable to a ruling on the record. Scheduling Order filed April 21, 2020, ECF No. 29.

Petitioner filed a Motion for a Ruling on the Record on June 19, 2020, arguing she had established a Table claim and was entitled to compensation. Petitioner's Motion ("Pet. Mot.") at 5-7, ECF No. 30. Respondent filed a response on July 28, 2020. ECF No. 33. Petitioner did not file a reply. The matter was dismissed for insufficient proof on July 9, 2021. ECF No. 34.

On January 7, 2022, petitioner filed a Motion for Attorneys' Fees and Costs requesting a total of $18,005.93. Motion for Fees, ECF No. 38. Respondent filed a response on January 20, 2022, opposing the motion and raising reasonable basis. Response, ECF No. 39. On March 21, 2022, petitioner filed a Reply maintaining that objective evidence in the record supports reasonable basis. Reply, ECF No. 42 ("Reply").

This matter is now ripe for consideration.

---

[4] Mr. Almonte's name is spelled at least three different ways, including Fruit Cruz Alamonte (Status Report at 1, ECF No. 19), Fruto Cruz Almonte (Pet. Ex. 14 at 1), and Fruit Cruz Almonte (Pet. Ex. 14 at 1).

**B. Summary of Relevant Medical Records**

Petitioner received a flu vaccine on December 5, 2015. Pet. Ex. 1. At that time, she was being treated for uncontrolled Type 2 diabetes mellitus with diabetic chronic kidney disease, and hypertension. Pet. Ex. 4 at 78-79. Petitioner visited her primary care provider three times in December 2015 after the flu vaccination was administered, each time for a follow-up of uncontrolled diabetes and hypertension. *Id*. at 69-80.

On December 18, 2015, petitioner presented to her primary care provider at Plaza Del Sol Health Center for an uncontrolled Type 2 diabetes mellitus evaluation and follow-up. She was positive for polydipsia[5] and polyuria.[6] Her diabetes medications were increased, she was directed to continue her hypertension medications, and Humalog[7] was administered for hyperglycemia.[8] Pet. Ex. 4 at 78-80.

At a December 23, 2015 follow-up visit with her primary care provider, petitioner was experiencing shortness of breath and increased urination. Pet. Ex. 4 at 75-76. Petitioner also reported having a foot massage the day before and was experiencing muscle spasms in her foot. *Id*. Her neurologic exam at this time showed normal gait. *Id.*

On December 30, 2015, petitioner presented to Urban Health Plan, Inc. for care coordination of uncontrolled diabetes. She stated she has been maintaining a healthy eating plan and walking thirty minutes daily. Petitioner and her provider created a care plan. Pet. Ex. 4 at 73-74.

On January 6, 2016, petitioner returned to Plaza Del Sol Health Center for a diabetes reevaluation. She reported that her finger stick was very high every morning. She was negative for acute distress, dizziness, fever, chest pain, and shortness of breath. Petitioner planned to restart metformin[9] with follow up every three months to check her kidney function. Pet. Ex. 4 at 70-71. Her medications for hypertension, hypercholesterolemia[10], and hypertriglyceridemia[11] were refilled and Humalog was administered for hyperglycemia. *Id*. at 70-72.

Thereafter, in January 2016, petitioner traveled to the DR. Pet. Ex. 12 at 13. In a medical record from WellStar Cobb Hospital after her return from the DR dated March 11, 2016, petitioner's daughter reported that petitioner fell ill while in the DR on February 2, 2016, and was

---

[5] Polydipsia is defined as "chronic excessive thirst and intake of fluid; it may have an organic cause, such as the dehydration of diabetes mellitus, diabetes insipidus, or a reaction to medication, or be of psychological origin." *Dorland's Illustrated Medical Dictionary* 1466. (33rd ed. 2019) [hereinafter "*Dorland's*"].
[6] Polyuria is defined as "the passage of a large volume of urine in a given period, as in diabetes mellitus." *Dorland's* 1472.
[7] Humalog is defined as the "trademark for preparations of insulin lispro." *Dorland's* 863.
[8] Hyperglycemia is defined as "abnormally increased glucose in the blood." *Dorland's* 878.
[9] Metformin is defined as "a biguanide antihyperglycemic agent that potentiates the action of insulin, used in the treatment of type 2 diabetes mellitus; administered orally." *Dorland's* 1129.
[10] Hypercholesterolemia is defined as "excessive cholesterol in the blood." *Dorland's* 876.
[11] Hypertriglyceridemia is defined as "excessive triglycerides in the blood." *Dorland's* 886.

4

unable to walk, talk, or stand, and was experiencing incontinence. Pet. Ex. 2 at 999. On or about February 5, 2016, while in the DR, petitioner presented to a local hospital reporting a two-day history of diarrhea. *Id*. at 1656; Pet. Ex. 15. Three days later, on or about February 8, 2016, petitioner was admitted to Policlinico Union with complaints of generalized weakness and difficulty breathing. Following a lumbar puncture and cranial tomography, petitioner was diagnosed with GBS. Pet. Ex. 2 at 1656. Between February 8, 2016 and February 19, 2016, petitioner was in the intensive care unit at Policlinico Union. *Id*. Her diagnoses included GBS and acute diarrheal disease. *Id*. at 28.

Petitioner was returned to the United States on February 19, 2016 and was admitted to the ICU at Wellstar Cobb Hospital in Austell, GA with a history of diarrheal illness one week prior to her hospitalization in the DR on February 8, 2016. Pet. Ex. 2 at 147-51. On February 20, 2016, Dr. Huff treated petitioner noting that her condition was "[l]ikely Guillain Barre syndrome - ascending paralysis post infectious diarrhea." *Id*. at 147. Dr. Huff also reported that petitioner "was in the DR with her family" and "started having a diarrheal illness." "She seemed to improve, but then came back to the hospital on 2/8 with weakness. . .and tingling in her legs" *Id.* at 148. Petitioner was also evaluated by a neurologist on February 20, 2016, who noted that petitioner had experienced a diarrheal illness and "developed ascending numbness and weakness" thereafter. *Id*. at 169.

On February 24, 2016, petitioner had a consult with a rehabilitation specialist. Pet. Ex. 2 at 156-57. The specialist documented petitioner's history, including her developing a diarrheal illness while vacationing with her family in the DR. *Id*.

Petitioner was discharged from the hospital on March 4, 2016 and transferred to inpatient rehabilitation. Pet. Ex. 2 at 151-56. At the time of her transfer, the medical record documented that petitioner's GBS may have been caused by a mosquito bite-related viral infection. *Id.* at 152.

Upon admission to the inpatient rehabilitation facility, her condition was described as beginning in the DR with "weakness and numbness of her extremities which became progressive, after fighting a diarrheal illness." Pet. Ex. 2 at 944. Petitioner remained in the inpatient rehabilitation facility for two weeks. *Id*. at 1025. She was discharged on March 18, 2016. Pet. Ex. 3 at 16-24.

Petitioner's next medical visit was five months later on August 4, 2016, when she presented to her PCP and "said she got GBS at the end of [J]anuary possible 2/2 influenza vaccine that she got on 12/15/15. . ." Pet. Ex. 4 at 67.[12] Petitioner again saw her PCP on November 2, 2016, who noted a history of GBS that had an "unclear cause possible influenza vaccine?" *Id.* at 59-63.

On November 2, 2016, petitioner underwent an EMG and nerve conduction study. Pet. Ex. 4 at 62. The study revealed evidence of mild, mixed, primarily motor polyneuropathy involving

---

[12] Petitioner's flu vaccine was administered on December 5, 2015. Pet. Ex. 1.

5

the lower extremities. Pet. Ex. 7 at 7-10. Petitioner also complained of balance and strength issues and requested PT in late November of 2016. Pet. Ex. 4 at 91.

On November 29, 2016, petitioner consulted with an endocrinologist who documented a twenty-year history of Type 2 diabetes for which she did not follow a proper diet or exercise. Pet. Ex. 10 at 11-12. She complained of numbness and tingling, but a neurological examination showed her strength and reflexes to be within normal limits. *Id.*

Petitioner presented for several medical appointments between January and August of 2017, which included her PCP, a neurologist, and an orthopedist due to a fall and leg fracture. Pet. Ex. 5 at 34-36; Pet. Ex. 7 at 12-13; Pet. Ex. 8 at 52-53.

On January 18, 2018, over three years after her flu vaccination, petitioner consulted with a speech pathologist complaining of persistent speech and swallowing difficulties. Pet. Ex. 12 at 16-17. During that visit, petitioner reported that the tingling in her extremities began as early as December 2015, before traveling to the DR. *Id.* at 16.

On February 8, 2018, petitioner consulted with Dr. Pleninger, a neurologist. Pet. Ex. 12 at 13-15. At this examination, petitioner reported that she received a flu vaccine in November, then traveled to the DR in January 2016 where she was diagnosed with GBS.[13] She reported increased falls after going to the DR which she blamed on the uneven pavement. *Id*. at 13. She also reported that tingling in her hands began in December 2015, which her doctor attributed to her uncontrolled sugars. *Id.*

## II. Discussion

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petition results in compensation, petitioner is entitled to reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 569 U.S. 369, 373 (2013). Where a petitioner does not prevail on entitlement, a special master has discretion to award reasonable fees if the petition was brought in "good faith" and with a "reasonable basis" for the claim to proceed. § 15(e)(1). A petitioner's good faith is presumed "in the absence of direct evidence of bad faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Where no evidence of bad faith exists and respondent does not challenge petitioner's good faith, good faith requires no further analysis. In the instant case, the undersigned has no reason to believe, and respondent does not argue, that petitioner did not bring her claim in good faith. Therefore, the undersigned finds that petitioner brought her claim in good faith.

---

[13] Petitioner received the subject flu vaccine on December 5, 2015 and was diagnosed with GBS during a hospital admission on February 8, 2016 in the DR following a diarrheal illness.

**A. Reasonable Basis**

   **1. Legal Standard**

In discussing the reasonable basis requirement, the Federal Circuit stressed the prima facie petition requirements of § 11(c)(1) of the Act. *Cottingham ex. rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the petitioner:

> (1) received a vaccine listed on the Vaccine Injury Table;
> (2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;
> (3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;
> (4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
> (5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Cottingham*, 971 F.3d at 1345-46.

Reasonable basis is an objective inquiry, irrespective of counsel's conduct or a looming statute of limitations, that evaluates the sufficiency of records available at the time a claim is filed. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). A special master's evaluation of reasonable basis focuses on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient objective evidence to make a feasible claim for recovery. *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018).

Reasonable basis is satisfied when there is more than a mere scintilla of objective evidence, such as medical records or medical opinions, supporting a feasible claim before filing. *See Cottingham*, 971 F.3d at 1346; *see Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)); *see Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012). A recent attempt to clarify what quantifies a "scintilla" looked to the Fourth Circuit, which characterized "more than a mere scintilla of evidence" as "'evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation.'" *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021) (*quoting Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)). Additionally, absence of an express medical opinion of causation is not necessarily dispositive of whether a claim has a reasonable basis. Medical records may support causation even where the records provide only circumstantial evidence of causation. *James-Cornelius on Behalf of E.J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379-80 (Fed. Cir. 2021).

Evaluation of reasonable basis is limited to the objective evidence submitted. *Simmons*, 875 F.3d at 636. Still, a special master is not precluded from considering objective factors such as

7

"the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). In *Cottingham*, the Federal Circuit expressly clarified that special masters are permitted to utilize a totality of the circumstances inquiry in evaluating reasonable basis, including, but not exclusively limited to, objective factors such as those identified in *Amankwaa*. *See Cottingham*, 971 F.3d at 1344. The Federal Circuit reiterated that counsel's conduct is subjective evidence not to be considered when evaluating reasonable basis. *Id*. at 1345. Counsel's attempt or desire to obtain additional records before filing is subjective evidence and does not negate the objective sufficiency of evidence presented in support of a claim. *James-Cornelius*, 984 F.3d at 1381. The Federal Circuit has additionally articulated that special masters cannot broadly categorize all petitioner affidavits as subjective evidence or altogether refuse to consider petitioner's sworn statements in evaluating reasonable basis. *Id.* at 1380 (holding that factual testimony, when corroborated by medical records and a package insert, can amount to relevant objective evidence for supporting causation). However, a petitioner's own statements cannot alone support reasonable basis, and special masters may make factual determinations as to the weight of evidence. *See, e.g.*, *Chuisano*, 116 Fed. Cl. at 291; *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018); *Cottingham*, 971 F.3d at 1347.

While absent or incomplete records do not strictly prohibit a finding of reasonable basis, an overwhelming lack of objective evidence will not support reasonable basis. *Chuisano*, 116 Fed. Cl. at 288; *see Simmons*, 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner disappeared for two years before filing a claim). The objective evidence in the record must also not be so contrary that a feasible claim is not possible. *Cottingham*, 154 Fed. Cl. at 795, citing *Randall v. Sec'y of Health & Human Servs*., No. 18-448V, 2020 WL 7491210, at *12 (Fed. Cl. Spec. Mstr. Nov. 24, 2020) (finding no reasonable basis when petitioner alleged a SIRVA injury in his left arm though the medical records indicated that the vaccine was administered in petitioner's right arm). A claim may lose reasonable basis as it progresses if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs*., 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376–77 (Fed. Cir. 1994)).

Though a special master has broad discretion, a special master must keep in mind the Vaccine Act's remedial objective of maintaining petitioners' access to willing and qualified legal assistance, and a special master may not abuse their discretion in denying reasonable basis and fees. *See James-Cornelius*, 984 F.3d at 1381.

### B. The Parties' Arguments

#### 1. Petitioner's Argument

Petitioner argues that there is a reasonable basis for bringing the claim because she "provided objective evidence to support her claim for a Table Injury of Guillain-Barré Syndrome." Reply at 6.

8

In support of the argument that petitioner had a feasible Table claim, counsel relies on petitioner's report that she began to experience tingling in her extremities the same month that she received the flu vaccine, which would place the onset of her symptoms within the 42-day period for GBS after the flu vaccine. Reply at 6 (citing Pet. Ex. 12 at 12). Petitioner's counsel also relies on petitioner's reported falls that occurred in the DR in January 2016 as evidence that she experienced GBS symptoms during the 42-day timeframe. *Id.*

Finally, petitioner's counsel asserts that petitioner's symptoms lasted for greater than six months because of her reported tingling and weakness in her hands, her use of a cane, and her neurologist's opinion that her GBS sequalae had not resolved completely. Reply at 6 (citing Pet. Ex. 12 at 13-15).

**2. Respondent's Argument**

Respondent argues that petitioner failed to establish a reasonable basis for her claim and the Motion for Fees should be denied. Response at 1.

Respondent submits that the reasonable basis requirement is an objective standard which petitioner has the burden of demonstrating, citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011). Response at 3. Respondent asserts that there was no reasonable basis for this claim because the onset of petitioner's GBS symptoms was outside the timeframe for a table case, and beyond a timeframe that has been recognized in this Court for a flu vaccine GBS injury case. *Id.* at 4-5. Respondent relies on *Barone v. Sec'y of Health & Human Servs.*, No. 11-707V, 2014 WL 6834557, at *13 (Fed. Cl. Spec. Mstr. Nov. 12, 2014) which found eight weeks to be the longest reasonable timeframe for a flu vaccine and GBS injury. *Id.* at 5. Respondent also argues that there is strong evidence of an alternative cause because petitioner's records often attribute her developing GBS to a previous diarrheal illness. *Id.*

### III. Analysis of Reasonable Basis

Petitioner has satisfied the *Cottingham* elements of reasonable basis because she filed facially trustworthy medical records demonstrating that she (1) received a vaccine listed on the Vaccine Injury Table; (2) received the vaccination in the United States; (3) sustained an injury of GBS as set forth in the Vaccine Injury Table; (4) experienced the residual effects of the injury for more than six months; and (5) has not previously collected an award or settlement of a civil action for damages for the same injury. 971 F.3d at 1345-46.

To establish a reasonable basis for attorneys' fees, the burden is lower than the preponderant evidence standard required to prove entitlement to compensation. *Cottingham ex. rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Petitioner must provide more than a mere scintilla of evidence, defined as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021) (*quoting Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)).

Petitioner received an influenza vaccine on December 5, 2015. Pet. Ex. 1. To satisfy the requirements of a Table Injury for influenza vaccine, the onset of petitioner's GBS would have had to have been within 3 to 42 days of vaccination, or at the latest January 16, 2016. The records filed with the petition include four medical visits in December 2015 and one on January 6, 2016, at which petitioner did not complain of any neurological symptoms. Pet. Ex. 4 at 70-80. The petitioner then traveled to the DR in January 2016 where she became ill. Pet. Ex. 3 at 275.

Despite extensive efforts, the medical records from her care in the DR were never secured and therefore not filed. Without these records, proof of what petitioner reported to the doctors in the DR and the exact date of the onset of her GBS remained unknown. At the time the petition was filed and for several months thereafter, it was believed that the records from the DR would be obtained. ECF No. 18 at 1. When petitioner was unsuccessful in obtaining these records, petitioner's counsel sent a general request for records, a request in Spanish, and emailed petitioner's doctor in the DR directly. *Id.* Petitioner then advised that she planned to travel to the DR herself to collect records. *Id.* Petitioner also hired an attorney from the DR, Fruit Cruz Almonte, to assist her in collecting these records, who assured that the records would be delivered to petitioner's counsel. ECF No. 19. However, no additional records from the DR were secured except for a cumulative one-page record in Spanish listing petitioner's diagnoses, filed as Petitioner's Exhibit 15. ECF No. 21.

Regarding an off-Table claim, respondent acknowledged that this court has recognized the latest onset of flu vaccine/GBS injury to be within eight weeks or two months after vaccination. *See e.g.*, *Finch v. Sec'y of Health & Hum. Servs.*, No. 17-675V, 2018 WL 818265 at *1 (Fed. Cl. Spec. Mstr. Jan. 19, 2018) (special master did not consider GBS onset more than two months after flu vaccination to be compensable); *De La Cruz v. Sec'y of Health & Hum. Servs.*, No. 17-783V, 2018 WL 945834 at *1 (Fed. Cl. Spec. Mstr. Jan. 23, 2018) (finding a flu vaccine/GBS injury case with onset greater than eight weeks after vaccination is not compensable for causation in fact or significant aggravation); *Corder v. Sec'y of Health & Human Servs.*, No. 08-228V, 2011 WL 2469736, at *27-29 (Fed. Cl. Spec. Mstr. May 31, 2011) (finding a proposed four-month onset period from vaccination to GBS injury to be too long and two months to be the longest reasonable timeframe). Therefore, the onset of petitioner's symptoms would have needed to be at most within 8 weeks of her flu vaccine to sustain an off-Table claim. Petitioner was in the DR during this time and through February 19, 2016, when she was airlifted to a hospital in Georgia. Pet. Ex. 2 at 1653. Therefore, the medical records from the DR were crucial in determining petitioner's onset of GBS symptoms.

The reasonable basis inquiry requires the special master to consider the totality of the circumstances, including objective factors such as the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation. *Amankwaa*, 138 Fed. Cl. 282, 289 (2018). As illustrated in *James-Cornelius*, medical records may support causation even where the records provide only circumstantial evidence of causation. 984 F.3d 1374, 1379-80 (Fed. Cir. 2021). Furthermore, "[a]bsence of an express medical opinion on causation is not necessarily dispositive of whether a claim has a reasonable

basis, especially when the case is in its early stages and counsel may not have had the opportunity to retain qualified experts." *Id.* at 1379.

In this case, the totality of the circumstances and the medical records provide more than a mere scintilla of evidence to support petitioner's claim. The medical records show that petitioner was diagnosed with GBS on or about February 8, 2016 and that her symptoms began a week prior—around two months after receiving her flu vaccine. Pet. Ex. 2 at 1656.

After her return from the DR, on March 14, 2016, petitioner's daughter reported to medical personnel that her mother became ill on February 2, 2016, was unable to walk, talk, or stand and was experiencing incontinence. Pet. Ex. 2 at 999. On August 4, 2016, petitioner presented to her PCP reporting "she got GBS at the end of [J]anuary possible 2/2 influenza vaccine that she got on 12/15/15. . ." Pet. Ex. 4 at 67. On November 2, 2016, petitioner's PCP noted a history of GBS that had an "unclear cause possible influenza vaccine?" *Id.* at 59-63. At an appointment with a speech pathologist on January 18, 2018, petitioner reported that tingling began as early as December of 2015. Pet. Ex. 12 at 16-17.

When viewing the totality of the circumstances, the records secured prior to the filing of the petition provided more than a scintilla of evidence that onset was potentially within a medically appropriate timeframe for a vaccine-related injury of GBS. Thus, the records support a reasonable inference that petitioner's GBS was caused by the influenza vaccine she received on December 5, 2015. While this evidence alone would be insufficient to prove causation, it is sufficient to meet the burden required for a finding of reasonable bases and for awarding fees.

Petitioner's counsel recognized the importance of the medical records from the DR for petitioner to sustain her burden going forward. Extensive efforts were undertaken to secure the medical records from the DR. Petitioner's counsel was advised by petitioner that she was in the process of collecting records and that she would travel to the DR to get records. ECF No. 18. Records from the DR were requested several times by petitioner's counsel. Per petitioner's counsel's billing records, records from Policlinico Union Hospital were first requested on April 2, 2018. Motion for Fees at 6. A request in Spanish was made on November 15, 2018, as well as a general request. *Id.* at 8. Petitioner's counsel conferred with partners and associates within her firm and with outside counsel regarding medical records from the DR. *Id.* at 9. After an attorney was hired in the DR, petitioner's counsel called the attorney on April 22, 2019 regarding medical records and made several additional calls regarding records throughout that month. *Id.* at 12. Petitioner's counsel emailed the DR attorney regarding records on June 5, 2019. *Id.*

A status conference was held on June 18, 2019, and an Order issued detailing petitioner's counsel's efforts to collect records, including directly emailing petitioner's doctor in the DR who represented that he would provide records and later reneged. ECF No. 18. It was agreed that petitioner would travel to the DR prior to the fall of 2019 to collect records herself. ECF No. 18. A single page medical record certification was received from Policlinico Union and filed on July 30, 2019. Pet. Ex. 15. Also on July 30, 2019, petitioner's counsel filed a status report stating that

11

per representations of Mr. Almonte, this is "the only kind of record that will be released." ECF No. 22.

In a status report filed on February 3, 2020, petitioner's counsel advised that the records from the DR could not be secured and acknowledged that without these records petitioner would be unable to meet her burden of proof. ECF No. 26. A status conference was held on April 21, 2020, at which petitioner's counsel advised that petitioner was unwilling to dismiss her claim but was amenable to a decision on the record. ECF No. 29. Petitioner filed a motion for a ruling on the record on June 19, 2020, and, after respondent filed a response, a decision issued on July 9, 2021 dismissing the claim. ECF Nos. 30, 33-34.

Because the records from the DR were never obtained, the precise onset of petitioner's illness, the cause thereof, and what she reported to medical personnel at the time of her initial presentation remained unknown. Nevertheless, absent records do not prevent a finding of reasonable basis, provided there is some objective evidence in support of the claim. *Chuisano*, 116 Fed. Cl. at 288. In this case, while records from the DR were never obtained, objective evidence existed to form a reasonable basis for filing the claim. Without records from Policlinico Union in the DR, the exact onset of petitioner's GBS remained unclear. However, at the time the petition was filed, it was clear from the medical records that petitioner's GBS symptoms arose at some point prior to February 8 while she was in the DR and potentially within two months of her receipt of the flu vaccine. Pet. Ex. 2 at 1656.

Respondent argues that petitioner's claim lacks a reasonable basis because the onset of petitioner's GBS symptoms was too late for causation. However, although a definitive date for onset cannot be gleaned from the records filed, the medical records contain sufficient evidence to demonstrate that petitioner's symptoms began while in the DR and thus, potentially within the requisite time period after the vaccine to support a reasonable basis for the filing of her claim.

Additionally, respondent argues that there was a potential alternative cause of a diarrheal illness. Response at 5. However, alternative cause is an issue directed toward causation for entitlement. The Federal Circuit held that it is an abuse of discretion for a special master to require preponderant evidence of causation in order to prove reasonable basis; rather, the appropriate standard is more than a mere scintilla of evidence of causation. *Cottingham*, 971 F.3d at 1344. Moreover, petitioner is not required "to eliminate alternative causes as part of establishing [her] prima facie case." *Doe v. Sec'y of Health & Human Servs.*, 601 F.3d 1349, 1357–58 (Fed. Cir. 2010). While several doctors opined that a diarrheal illness may have been the cause, petitioner's other physicians noted a possibility that the flu vaccine caused petitioner's GBS. Pet. Ex. 4 at 67.

Finally, special masters have underscored the importance of awarding attorneys' fees to encourage the participation of competent legal counsel in the Vaccine Program. As the Special Master stated in *Iannuzzi v. Sec'y of Health & Human Servs.*:

12

> Simply put, the ultimate purpose of Vaccine Act fees and costs awards is *not* to benefit the *attorneys* involved, but to *ensure that Vaccine Act petitioners will have adequate access to competent counsel*. . . Accordingly, when attorneys spend a reasonable amount of time and costs in representing Vaccine Act petitioners, such attorneys must be fairly compensated for their expenditures, in order to encourage attorneys to participate in future Vaccine Act cases.

No. 02-780V, 2007 WL 1032379, at *11 (Fed. Cl. Spec. Mstr. Mar. 20, 2007), *rev'd in part*, 78 Fed. Cl. 1 (2007) (emphasis in original); *see also James-Cornelius*, 984 F.3d at 1381 (in exercising her discretion to award attorneys' fees, the special master must keep in mind the remedial objective of maintaining petitioners' access to willing and qualified legal assistance).

The filed medical records provide more than a mere scintilla of objective evidence that petitioner's GBS was caused by the flu vaccine. Petitioner's primary care doctor noted the flu vaccine as a possible cause of her GBS, and GBS has been causally linked to the flu vaccine, supporting the feasibility of petitioner's claim. *See Cottingham*, 971 F.3d at 1346 ("Medical records can support causation even where the records provide only circumstantial evidence of causation."); *see also* 42 C.F.R. § 100.3(a) (GBS after flu vaccine is listed as a covered injury on the Vaccine Injury Table).

For these reasons, the undersigned finds that there was a reasonable basis for the filing of the petition and during the pendency of the matter until it was dismissed.

### IV. Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. *Id.* at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours, including those by paralegals, that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id.* at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. See *Sabella v. Sec'y of Health*

13

*& Human Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen*, 102 Fed. Cl. at 729.

1. **Reasonable Hourly Rates**

A reasonable hourly rate is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). Rather than being based on the prevailing rate in the forum where petitioner's attorney practices, the rate is based on the forum rate for the District of Columbia. *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). A narrow exception to this forum rule applies "where the bulk of the attorney's work is done outside the forum jurisdiction, and where there is a very significant difference in the compensation rate between the place where the work was done and the forum." *Id.* This exception is known as the *Davis County* exception, and it provides for attorneys' fees to be awarded at local hourly rates. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

*McCulloch* provides a multifactor framework for deciding the reasonable forum rate based on the attorney's experience, overall quality of work performed, and prevailing rates in the program and forum. *McCulloch v. Sec'y of Health & Human Servs*., No. 09-293V, 2015 WL 5634323, at *17 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[14]

Attorney Bridget C. McCullough has been practicing in the Vaccine Program since 2017. Motion for Fees at 2. She has submitted hourly rates of $225.00 for time billed in 2018 and 2019, $250.00 for time billed in 2020, $275.00 for time billed in 2021, and $300.00 for time billed in 2022. *Id*. at 1. Each of these hourly rates have previously been awarded to Attorney McCullough for work performed in the corresponding years. *See Schnarr v. Sec'y of Health & Hum. Servs.*, No. 18-1362V, 2019 WL 2524310 (Fed. Cl. Spec. Mstr. Apr. 9, 2019) (awarding the requested fees from 2018 to 2019); *Wyffels v. Sec'y of Health & Hum. Servs.*, No. 18-1874V, 2022 WL 1055165 (Fed. Cl. Spec. Mstr. Mar. 8, 2022) (awarding the requested fees from 2020 to 2022). Thus, I find the hourly rates billed by Attorney McCullough to be reasonable.

Attorney Paul Brazil has submitted hourly rates of $317.00 for 2018 and $325.00 for 2019. Motion for Fees at 1. Attorney Brazil has previously been awarded these rates for work performed in the corresponding years. *Marino v. Sec'y of Health & Human Servs.*, No. 16-0622V, 2018 WL 4611637 (Fed. Cl. Spec. Mstr. June 22, 2018) (awarding the requested fees for 2018); *Serra v. Sec'y of Health & Human Servs.*, No. 18-0672V, 2019 WL 7167646 (Fed. Cl. Spec. Mstr. Oct. 25,

---

[14] The 2015-2023 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Sers*., No. 09-923V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

14

2019) (awarding the requested fees for 2019). Thus, I find the hourly rates billed by Attorney Brazil to be reasonable.

I find the hourly rate of $125.00 billed for Ms. Schaffer, Ms. Loecker, Ms. McNicholas, Ms. Bowman, Ms. Bole, and Ms. Messer to be aligned with the hourly rate for paralegal work as listed in the fee schedule, and thus find this rate to be reasonable.

The requested hourly rate of $165.00 for paralegal Ms. Yoos has previously been awarded. *Cordova v. Sec'y of Health & Hum. Servs.*, No. 17-1282V, 2021 WL 5985537 (Fed. Cl. Spec. Mstr. Nov. 22, 2021). In previous cases, paralegal Ms. Tereza Pavlacsek has been awarded the requested hourly rates of $140.00 for work performed in 2019, $150.00 for work performed in 2020, and $160.00 for work performed in 2021. *See, e.g.*, *Putnam v. Sec'y of Health & Hum. Servs.*, No. 19-1921V, 2022 WL 2133979 (Fed. Cl. Spec. Mstr. May 12, 2022). Thus, I find the hourly rates billed by paralegals of the Muller Brazil firm to be reasonable.

### 2. Hours Reasonably Expended

Attorneys' fees may be awarded for the number of hours reasonably expended during litigation. *Avera*, 515 F.3d at 1348. The special master should use her prior experience and judgement to exclude from the fee calculation hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Unreasonably duplicative or excessive billing can include attorneys billing at attorney rates for clerical work, "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intraoffice communications, attorneys billing excessive hours, attorneys entering erroneous billing entries, [and] attorneys billing excessively for interoffice communications." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 702-703 (2016). Secretarial and clerical tasks such as reviewing invoices and scheduling meetings are not compensable under the Vaccine Program. *See McCulloch*, 2015 WL 5634323, at *26; *Raymo,* 129 Fed. Cl. at 702. Billing for learning about the basic aspects of the Vaccine Program is also not compensable. *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016).

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Further, attorneys may be compensated for hours traveled at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases); *see also Knox v. Sec'y of Health & Human Servs.*, No. 90–33V, 1991 WL 33242, at *7 (Fed. Cl. Spec. Mstr. Feb. 22, 1991) (finding that "50% of the expert's [travel] time should be compensated"). Ultimately, the special master maintains discretion in awarding fees for reasonable hours expended and "is permitted to reduce attorneys' hours found to be excessive by a percentage." *Raymo,* 129 Fed. Cl. at 702; *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the Special Master's reduction of

attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Attorney McCullough billed 14.4 hours at an hourly rate of $225.00 for 2018, 17.6 hours at an hourly rate of $225.00 for 2019, 10.3 hours at an hourly rate of $250.00 for 2020, 1.4 hours at an hourly rate of $275.00 for 2021, and 3.2 hours at an hourly rate of $300.00 for 2022.[15] Motion for Fees at 1, 6-15. Attorney Brazil billed 1.1 hours at an hourly rate of $317.00 for 2018, and .4 hours for 2019, with .2 hours at an hourly rate of $317.00, and .2 hours at an hourly rate of $325.00. *Id.* The attorneys billed collectively a total of **$11,597.10.** Upon review of the hours billed by Attorney McCullough and Attorney Brazil, I find that their time was appropriately documented with specificity and their billing records did not contain charges for impermissible tasks, such as administrative duties or time spent learning about the Program. Therefore, no reduction is warranted.

Paralegals Ms. Schaffer, Ms. Loecker, Ms. McNicholas, Ms. Bowman, Ms. Bole, and Ms. Messer have billed 19.9 hours at a rate of $125.00 per hour for 2018-2019. Motion for Fees at 6-12. Paralegal Ms. Pavlacsek submitted 3.9 hours at an hourly rate of $125.00 for 2018, 10.4 hours at an hourly rate of $140.00 for 2019, .6 hours at an hourly rate of $150.00 for 2020, and .4 hours at an hourly rate of $160.00 for 2022. Motion for Fees at 6-15. Paralegal Ms. Yoos has billed for .7 hours at an hourly rate of $165.00 for 2018. Motion for Fees at 6. Paralegals have billed for a total of **$4,700.50.** Upon review of the hours billed by paralegals of the Muller & Brazil firm, I find that their time was appropriately documented with specificity and their billing records did not contain charges for impermissible tasks. Therefore, no reduction is warranted.

3. **Reasonable Costs**

Petitioner also requested **$1,708.33** for miscellaneous expenses paid by the Muller Brazil firm such as medical records, court filings, and shipping expenses. Motion for Fees at 2. These costs are reasonable and supported by the receipts filed, and I will compensate them in full.

### V. Conclusion

Based on the foregoing, petitioner's Motion for Attorneys' Fees is **GRANTED.** The undersigned finds that it is reasonable to compensate petitioner and her counsel for **total attorneys' fees and costs of $18,005.93** representing **$16,297.60** in attorneys' and paralegals' fees and **$1,708.33** in costs.

Accordingly, the undersigned awards:

---

[15] The only services Attorney McCullough billed for in 2022 at her new rate of $300 were: "Review File for Billing Accuracy" for 1.5 hrs; "Draft Application for Fees and Costs" for .90 hr.; "Prepare Billing Invoice" for .80 hr. Totaling 3.2 hours at a rate of $300 per hour for a total of $960. Attorney McCullough has been awarded in the past for such tasks with almost identical hours billed for each task. *Wyffels,* No. 18-1874V, 2022 WL 1055165, at *1 (awarding $300 per hour for 2022 for 1.5 hours spent reviewing billing records, .8 for drafting fee application, .8 for preparing billing invoice).

**A lump sum payment of $18,005.93 representing reimbursement for petitioner's attorneys' fees and costs in the form of a check payable jointly to petitioner and her counsel of record, Muller & Brazil.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[16]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.